UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| INSIGHT TERMINAL SOLUTIONS, LLC *et al*. | Case No. 19-32231 |
| Debtors | (Jointly Administered) |
| | |
| INSIGHT TERMINAL SOLUTIONS, LLC, as the Reorganized Debtor, | Adv. Pro. No. 24-03007-jal |
| PLAINTIFF, | Judge Joan A. Lloyd |
| v. | |
| CITY OF OAKLAND, | |
| DEFENDANT. | |

**PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO WITHDRAW THE REFERENCE AND TRANSFER VENUE**

Comes now the above-styled Plaintiff, Insight Terminal Solutions, LLC ("Plaintiff" or "Debtor"), by counsel, and hereby files this Objection to Defendant's Motion to Withdraw the Reference and Transfer Venue ("Objection"). In support of this Objection, Plaintiff provides as follows:

**PRELIMINARY STATEMENT**

1.      Through its Motion to Withdraw the Reference and Transfer Venue, dated November 27, 2024 [Doc. 57] ("Withdrawal/Venue Motion"), Defendant City of Oakland ("Defendant" or the "City") requests the United States District Court for the Western District of Kentucky ("District Court") to withdraw the reference of this adversary proceeding from the

United States Bankruptcy Court for the Western District of Kentucky ("Bankruptcy Court"). But the Withdrawal/Venue Motion is procedurally defective, premature, legally meritless, and is grounded on non-existent and misrepresented facts. Moreover, the Withdrawal/Venue Motion is garishly tactical because the City chose to purposefully forestall the filing of the Withdrawal/Venue Motion until its Motion to Dismiss[1] was denied by the Bankruptcy Court. The City was previously "all in" with the Bankruptcy Court when it was heartily litigating its Motion to Dismiss. Now, however, in the wake of a decisive denial from the Bankruptcy Court of its Motion to Dismiss, the City conveniently wishes to flee the Bankruptcy Court in pursuit of a new forum where it can retread its losing arguments. For these fundamental reasons and the other grounds detailed below, the Withdrawal/Venue Motion should be denied.

## BACKGROUND

2.      On March 11, 2024, Plaintiff filed its Complaint for Damages [Adv. Doc. 1] ("Complaint") alleging, among other things, that the City's judicially determined maleficence constitutes interference with Debtor's ability to monetize its Army Base Gateway Redevelopment Project Sub-Ground Lease for West Gateway, dated September 24, 2018 ("Sub-Ground Lease") with Oakland Bulk and Oversized Terminal, LLC ("OBOT"), directly resulting in at least one billion dollars in realized damages. At no time does the Plaintiff contend in the Complaint that it had a contract with the City. And while the Complaint mentions the pending lawsuit between OBOT and the City filed in the Superior Court of California, County of Alameda ("State Lawsuit") (*see* Compl. ¶ 39), at no time does Plaintiff contend that it is or was a party to the State Lawsuit. The City also acknowledges that Plaintiff is not part of the State Lawsuit. (Withdrawal/Venue Motion at 7 ("[Plaintiff] chose not intervene or otherwise sue the City in California state court.").)

---

[1] Defined *infra* at Paragraph 5.

3.    Instead, the Complaint's allegation against the City for tortious interference with prospective economic advantage and tortious interference with contract ("Adversary Proceeding") all relate back to Plaintiff's July 2019 petition for Chapter 11 bankruptcy protection ("Petition") and the Chapter 11 Plan of Reorganization [Bankr. Doc. 245-1] as supplemented by the Plan Supplement [Bankr. Doc. 265] (collectively, the "Plan") and as approved by the Bankruptcy Court on or about November 3, 2020 ("Confirmation Order"). (Compl. ¶¶ 44, 54-58, 62.) This includes, without limitation, relation back to Section 14 of the Confirmation Order which expressly preserves the right for Plaintiff to bring any "Litigation Claims" before the Bankruptcy Court, and Section 27 of the Confirmation Order, which contains broad jurisdictional retention language.[2]

4.    As acknowledged by the City in its Objections to Competing Chapter 11 Plans and Assumption of Sub-Ground Lease [Bankr. Doc. 276] ("City Objection"), the Sub-Ground Lease represents the "sole material asset" of Plaintiff.[3] (City Obj. 8-9.) As explained in Plaintiff's Sur-Reply to Reply to Objection to Defendant City of Oakland's Motion to Dismiss [Adv. Doc. 48] ("Sur-Reply"):

> During the status hearing, counsel for the City of Oakland asked "why are we here [in bankruptcy court?]" (Hr'g Tr. 8:15). The answer is quite simple and is the lynchpin for denying the City's motion to dismiss and allowing the Plaintiff to move forward with its tort claims against the City here in this proceeding.
>
> The parties are here because of the Sub-Ground Lease. The City continues to improperly attack the Sub-Ground Lease by asserting

---

[2] Article IX of the Plan provides: "Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain non-exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan, including jurisdiction to: . . . [1] resolve any matters related to . . . Unexpired Leases . . . [5] issue and implement orders in aid of execution, implementation, or consummation of the Plan . . . [8] hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan and disputes arising in connection with any Person or entity's obligations incurred in connection with the Plan . . . [12] hear any other matter not inconsistent with the Bankruptcy Code . . . . [15] enforce all orders previously entered by the Bankruptcy Court. After the Effective Date, the Bankruptcy Court shall retain jurisdiction with respect to each of the foregoing items and all other matters that were subject to its jurisdiction prior to the Confirmation Date . . . ."

[3] The Plan and Confirmation Order both acknowledge that Debtor may have other assets of its estate including, without limitation, Litigation Claims. Thus, to the extent this objection references the Sub-Ground Lease as the "sole asset" of the estate, it does so in agreement with the City that the Sub-Ground Lease is the sole "material" asset of the estate without waiving other assets of the estate like the Litigation Claims against Defendant.

> that the Sub-Ground Lease is invalid and expired because the
> Ground Lease was terminated by the City in 2018. This incorrect
> argument is fatally flawed because the Court's prior ruling that the
> Sub-Ground Lease was assumed as part of a confirmed chapter 11
> plan inherently means that the Sub-Ground Lease was valid and
> unexpired when it was assumed by ITS pursuant to a confirmed
> Chapter 11 plan of reorganization and in accordance with Section
> 365(a) of the Bankruptcy Code, which only permits the assumption
> of an "unexpired lease" of the debtor. See 11 U.S.C. § 365(a)
> (emphasis added).

(Sur-Reply ¶¶ 2-3.) Put differently, Debtor's sole material asset considered by the Court when

approving the Plan for reorganization is what the City continues to attack as alleged in the

Complaint. Moreover, Plaintiff specifically ties its damages in the Complaint to the diminution in

value of the Sub-Ground Lease realized by Plaintiff when the Plan was approved through the

Confirmation Order. (Compl. ¶¶ 56, 62.)

     5.    After the Complaint's filing, the City filed the Motion to Dismiss the Complaint

[Adv. Doc. 25] (the "Motion to Dismiss"), in which the City argued that the Complaint should be

dismissed in its entirety because the Bankruptcy Court lacked jurisdiction over the City and the

Adversary Proceeding. On November 21, 2024, the Bankruptcy Court entered its Memorandum-

Opinion and Order [Adv. Doc. 56] denying the Motion to Dismiss in its entirety, finding that the

Adversary Proceeding related to the Petition and the Plan. The Memorandum Opinion and Order

considered extensive briefings filed by the parties and oral arguments from the parties at hearings

on July 11, 2024, and October 16, 2024.

     6.    Seeking another bite at the apple, the City has now filed the Withdrawal/Venue

Motion, seeking once again to wrest jurisdiction from the Bankruptcy Court by attempting to

rehash its same, overruled arguments from the Motion to Dismiss to the District Court.

## ARGUMENT

7.     The Bankruptcy Court has jurisdiction over this Adversary Proceeding under section 1334 of Title 28 of the United States Code because the Complaint is a civil proceeding arising under the Bankruptcy Code and related to the Plan. *See* 28 U.S.C. § 1334(b). "The phrase 'arising under title 11' [Bankruptcy Code] describes those proceedings that involve a cause of action created or determined by a statutory provision of title 11." *In re Wolverine Radio Co.,* 930 F.2d 1132, 1144 (6th Cir. 1991) (citation omitted). "An expansive definition of 'related to' jurisdiction governs § 1334(b)." *In re HNRC Dissolution Co.,* 761 F. App'x 553, 559 (6th Cir. 2019) (citing *In re Wolverine Radio Co.,* 930 F.2d at 1141).

8.     Through the Memorandum Opinion and Order, the Bankruptcy Court has already found that it has "related-to" jurisdiction over the Adversary Proceeding; a ruling to which Defendant objects. (Withdrawal/Venue Motion, p. 11 n. 8.)  Fearing that it will lose the case if the Adversary Proceeding is allowed to continue in Kentucky, particularly in the Bankruptcy Court, Defendant's latest procedural tactic is to demand that the Adversary Proceeding be withdrawn to the District Court and then transferred to Defendant's home turf in California.

9.     District courts retain discretion to "withdraw, in whole or in part, any case or proceeding referred" to bankruptcy courts "for cause shown."  28 U.S.C. § 157(d). Tile 11 of the U.S.C. (the "<u>Bankruptcy Code</u>") does not define "cause," so courts evaluate the following factors to determine whether withdrawal is appropriate: "(1) whether the right to a jury trial exists; (2) whether the matter is core or non-core; (3) promoting judicial economy; (4) promoting uniformity in bankruptcy administration; (5) reducing forum shopping and confusion; (6) conserving the creditor's and debtor's resources; and (7) expediting the bankruptcy process." *Sergent v. McKinstry*, 472 B.R. 387, 404 (E.D. Ky. 2012).

10.     Withdrawal of the reference is the exception to the general rule that bankruptcy

matters should be adjudicated in bankruptcy court. *Irvin v. Faller*, 531 B.R. 704, 706 (W.D. Ky.

2015); *see also Official Comm. Of Unsecured Creditors of Appalachian Fuels, LLC v. Energy Coal*

*Res., Inc.*, 472 B.R. 731, 748 (E.D. Ky. 2012). As the party seeking withdrawal, Defendant has the

burden of proving that the court should withdraw the reference. C*IT Grp./Com. Servs., Inc. v.*

*Constellation Energy Commodities Grp., Inc.*, 2010 WL 5173271, at *1 (E.D. Ky. Dec. 14, 2010).

Yet the presumption is to leave adversary proceedings in the capable hands of the bankruptcy court.

*In re Old Time Pottery, LLC*, No. 3:20-BK-03138, 2021 WL 8013747, at *3 (M.D. Tenn. Nov. 8,

2021), report and recommendation adopted sub nom. *Old Time Pottery, LLC v. Pruitt*, No. 3:21-

CV-00398, 2022 WL 2821937 (M.D. Tenn. July 19, 2022).

## A.     THE WITHDRAWAL/VENUE MOTION IS PROCEDURALLY DEFECTIVE.

11.     As a preliminary matter, it is the Bankruptcy Court—not the District Court—to

whom Defendant should first be moving to determine whether or not the Adversary Proceeding is

core:

> Relying on section 157(b)(3), the Sixth Circuit has stated that the
> "bankruptcy judge rules on whether a particular proceeding is a core
> proceeding." . . . . Similarly, the bankruptcy court for the Western
> District of Michigan has recognized that it "is charged with the
> responsibility of determining whether a matter falls within the
> somewhat uncertain meaning of a 'core proceeding.' Likewise, the
> Bankruptcy Court *must also initially* determine whether a cause of
> action may be a noncore related proceeding or a noncore nonrelated
> proceeding." . . . . "Therefore, absent consent by all Defendants, and
> notwithstanding that the substantive issues raised may be affected
> or governed by state law, it is this court's duty to *initially* determine
> whether the adversary proceeding is a core proceeding, a noncore
> related proceeding, or a noncore, nonrelated proceeding.").

*In re Cmty. Mem'l Hosp.*, 532 B.R. 898, 902–03 (E.D. Mich. 2015) (internal citations omitted)

(cleaned up)*; see, e.g., In re Old Time Pottery, LLC*, No. 3:20-BK-03138, 2021 WL 8013747, at

*6 (report and recommendation adopted sub nom); *Old Time Pottery, LLC*, No. 3:21-CV-00398,

2022 WL 2821937 (bankruptcy court determining whether the adversary proceeding was core and

recommending to the district court).

12.    Defendant holds itself above the rules established by the Sixth Circuit and, without

consent from Plaintiff, "hereby moves" the District Court to leapfrog the Bankruptcy Court and

withdraw the reference of the Adversary Proceeding based on Defendant's (incorrect) claim that

the Adversary Proceeding "involves California state law tort claims only, and no claims arising in

or under federal bankruptcy law, under 28 U.S.C. § 157(d) . . . ." For this reason alone, the

Withdrawal/Venue Motion should be denied. *See In re Excel Eng'g, Inc*., 224 B.R. 582, 591 (Bankr.

W.D. Ky. 1998) (dismissing a claim for failure to comply with procedural requirements).

### B.    THE WITHDRAWAL/VENUE MOTION IS PREMATURE.

13.    It is common practice within the Sixth Circuit not to withdraw the reference until

close of discovery and, even then, only immediately before trial. In a case that should be familiar

to legal counsel for Defendant, the Eastern District of Kentucky determined:

> Although the Bankruptcy Court has determined that the claims
> asserted here are non-core and Defendant has the right to a jury trial,
> withdrawal is not appropriate at this time. The litigation of this
> adversary proceeding is still in its early stages and discovery is
> ongoing. Because of this, the Bankruptcy Court is in a better
> position to manage and handle the complex pre-trial issues and
> determine the contract claim to the ongoing bankruptcy matters. . . .
> In fact, the Bankruptcy Court has done just that in resolving the
> numerous motions filed since this Adversary Proceeding first began,
> including issues related to discovery, the parties, and in narrowing
> the claims filed by GenCanna. . . . Thus, while the claims may be
> non-core, the proceedings at this stage are best reviewed using the
> Bankruptcy Court's expertise, since issues involving bankruptcy
> provide context to the claims between the parties.

*In re OGGUSA, Inc*., No. 5:21-CV-6-JMH, 2021 WL 1230483, at *2 (E.D. Ky. Mar. 31, 2021)

(internal citations omitted) ("*GenCanna*"). This is true whether or not the adversary proceeding is

core. *In re Cmty. Mem'l Hosp.*, 532 B.R. at 904–05 ("Although this adversary proceeding is non-core, certain judges in this District have a standard policy of permitting the bankruptcy judge to retain authority over all pretrial proceedings, and will only withdraw the reference if and when the matter reaches trial.")

14.     Given the procedural small-ball played by the City to date, the Adversary Proceeding is still in its infancy, and the Defendant's tactics have thus far thwarted discovery. Thus, consistent with the common practice, the Adversary Proceeding should remain with the Bankruptcy Court, regardless of whether the Adversary Proceeding is core or non-core.

### C.     THE CLAIMS ASSERTED IN THE ADVERSARY PROCEEDING ARE "CORE."

15.     Notwithstanding the strong position *against* withdrawals in this district, Defendant still asks the District Court to withdraw the Bankruptcy Court's jurisdiction over the Adversary Proceeding under 11 U.S.C. § 157(d).  Section 157(d) provides for either permissive withdrawal of the reference, upon a showing of cause, or mandatory withdrawal of reference if consideration of certain other federal statutes is necessary. § 2:11. Reference and withdrawal of reference, 1 Bankruptcy Law Manual § 2:11 (5th ed.).

16.     <u>Mandatory</u> withdrawal is appropriate only where resolution of the claims will require "substantial and material" consideration of federal statutes impacting interstate commerce. *See In re Schlein*, 188 B.R. 13 (E.D.Pa.1995); *In re Philadelphia Training Ctr. Corp.*, 155 B.R. 109, 111 (E.D.Pa.1993) ("Movant must demonstrate that resolution of the proceedings will require substantial and material consideration of non-bankruptcy code federal laws."). Here, the non-bankruptcy law to be applied is California common law as it relates to causes of action for tortious interference with prospective economic advantage and tortious interference with contract. Neither

of these claims involves a federal statute regarding interstate commerce. As such, there are no

grounds for mandatory withdrawal of the reference.

17.    We next examine whether grounds exist for <u>permissive</u> withdrawal and note that

there is no statutory definition of what constitutes "cause shown" under 28 U.S.C. § 157(d). *See*

*In re Pelullo*, 1997 WL 535155, at *2. (E.D.Pa.). "Permissive withdrawal of reference 'is not

intended to be an escape hatch from bankruptcy court into district court,' therefore, 'courts prefer

to grant such relief only in a limited class of proceedings.'" *In re Rivas*, No. 1:09-cv-176, 2009

WL 2929424, at *1 (E.D. Tenn. Sept. 8, 2009) (quoting *Holland v. LTV Steel Co. 288* B.R. 770,

772–73 (N.D. Ohio 2002)). A threshold factor to permissive withdrawal is whether the proceeding

is "core" or "non-core" to the bankruptcy case. *Orion Pictures Corp. v. Showtime Networks, Inc.*,

4 F.3d 1095, 1101 (2d Cir.1993); *In re Philadelphia Training Center Corp.*, 155 B.R. at 112. A

proceeding is "core" if it "invokes a substantive right provided by title 11 or if it is a proceeding,

that by its nature, could arise only in the context of a bankruptcy case." *Torkelsen v. Maggio*, 72

F.3d 1171, 1178 (3d Cir.1996); *see also* 28 U.S.C. § 157(b)(2). "In core proceedings, bankruptcy

courts are empowered to enter final judgments, which are subject to conventional appellate review.

. . . By contrast, in non-core proceedings, bankruptcy courts may only submit proposed findings

of fact and conclusions of law to the district court." *Sergent*, 472 B.R. at 395 (internal quotations

and citations omitted).

18.    Section 157(b)(2) identifies a non-exhaustive list of "core" bankruptcy proceedings

including, without limitation, "(A) matters concerning the administration of the estate;" "(L)

confirmations of plans;" "(M) orders approving the use or lease of property;" and "(O) other

proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-

Case 3:25-cv-00023-BJB-RSE    Document 1-3    Filed 01/13/25    Page 10 of 23 PageID
#: 90
Case 24-03007-jal    Doc 65    Filed 12/23/24    Entered 12/23/24 20:48:13    Page 10 of
23

creditor or the equity security holder relationship . . . ." 28 U.S.C. § 157(b)(2)(A), (L), (M) and (O).

19.     Here, the claims asserted in Complaint are "core" proceedings under section 157(b)(2). As explained above, the Sub-Ground Lease (a lease of property) was the sole material asset of Debtor's estate justifying a reorganization under Chapter 11. It was included in the Confirmation Order. The claims against Defendant for tortious interference with the Sub-Ground Lease directly impact the implementation of the Plan and the use of the leased property identified in the Sub-Ground Lease. Thus, the Adversary Proceeding is a post-confirmation proceeding that is core to the implementation of the Plan and value of Debtor's estate. *See Sergent*, 472 B.R. at 399 (recognizing continued existence of estate post-confirmation and estate representative's right to pursue estate causes of action).

20.     Defendant contends that the Complaint merely contains post-confirmation state law tort and, as such, the Adversary Proceeding is "indisputably a non-core proceeding." (Withdrawal/Venue Motion at 12.) Even if this misleading statement were true, a bankruptcy court may also hear "non-core" proceedings that are otherwise related to a case under the Bankruptcy Code, and either submit proposed findings of fact and conclusions of law to the district court for *de novo* review and entry of judgment or, upon consent of all parties, enter final judgment on such proceedings. 28 U.S.C. § 157(c). "While a determination that a proceeding is non-core may weigh in favor of withdrawal, 'the fact that a proceeding is non-core, by itself, does not establish cause to withdraw.' [ ] In fact, while the core/non-core distinction is important, no one factor is dispositive." *Antioch Co. Litig. Tr. v. Morgan*, No. 3:10-CV-156, 2012 WL 5845003, at *1 (S.D.

Case 3:25-cv-00023-BJB-RSE     Document 1-3     Filed 01/13/25     Page 11 of 23 PageID
#: 81
Case 24-03007-jal     Doc 65     Filed 12/23/24     Entered 12/23/24 20:48:13     Page 11 of
23

Ohio Nov. 19, 2012) (internal citations and quotations omitted.)[4] Accordingly, given the impact on

the administration of the estate and the Plan, including utilization of the Sub-Ground Lease, plus

the Bankruptcy Court's previously determined "related to" subject-matter jurisdiction, the

Bankruptcy Court should continue to hear the matter even if the Adversary Proceeding were not

core. This is also consistent with § 1334(e)(1), which grants to the Bankruptcy Court exclusive

jurisdiction over all property of the debtor and the estate as of the commencement of the Chapter

11 proceeding. Thus, it would still be improper to withdraw the reference from the Bankruptcy

Court.

21.     To support its maligned position, Defendant argues (in a parenthetical) that

adversary proceedings with "related to" jurisdiction cannot be core under the Supreme Court's

ruling in *Stern v. Marshall*, 564 U.S. 462, 477 (2011) ("*Stern*").  Not only is such a position

inconsistent with the ample law cited above, but it conflicts with the ruling in *Stern*. "In *Stern,* the

Court held that bankruptcy courts lack constitutional authority to enter final judgment on state-law

counterclaims unless they <u>stem from the bankruptcy itself or would necessarily be resolved in the</u>

<u>claims allowance process</u>." *Villegas v. Schmidt*, 788 F.3d 156, 158 (5th Cir. 2015) (cleaned up)

(emphasis added); *see also Tanguy v. West*, No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013)

("[W]hile it is true that *Stern* invalidated  . . . [ ]§ 157(b)(2)(C) with respect to 'counterclaims by

the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited

holding applies only in that 'one isolated respect' . . . . We decline to extend *Stern's* limited holding

herein.".) Moreover, a cause of action specifically provided under the Bankruptcy Code does not

---

[4] Even the court in *Antioch*—relied upon by Defendant as support for why the Adversarial Proceeding should be withdrawn—did not withdraw the reference on a non-core proceeding until after the close of fact discovery. *Antioch Co. Litig. Tr. v. Morgan*, No. 3:10-CV-156, 2012 WL 5845003, at *2 (S.D. Ohio Nov. 19, 2012).

Case 3:25-cv-00023-BJB-RSE    Document 1-3    Filed 01/13/25    Page 12 of 23 PageID
#: 82
Case 24-03007-jal    Doc 65    Filed 12/23/24    Entered 12/23/24 20:48:13    Page 12 of
23

render a matter non-core simply because the suit involves state law. *In re Royce Homes*, LP, 578
B.R. 748, 757 (Bankr. S.D. Tex. 2017).

22.     As discussed above, the Adversary Proceeding—including the damages as alleged
in the Complaint—all stem from the Petition, Plan and Confirmation Order, as well as Defendant's
continued interference with the Sub-Ground Lease to the detriment of the Plan and Debtor's estate.
Given the Bankruptcy Court's broad powers under Section 1142 of the Bankruptcy Code to "direct
the debtor and any other necessary party to execute or deliver or to join in the execution or delivery
of any instrument required . . . to perform any other act, including the satisfaction of any lien, that
is necessary for the consummation of the plan . . . ", the Adversary Proceeding is core. Although
the Complaint's causes of action involve state law, the implication of how the alleged misconduct
directly involves implementation of the Plan and the value <u>and status</u>[5] of the Sub-Ground Lease,
the critical asset of the bankruptcy estate and confirmed Plan that is at the center of both tort claims.
Thus, the Adversary Proceeding is not a *Stern* claim, particularly given the narrow application of
the holding in *Stern. See also In re Fisher Island Invs., Inc.*, 778 F.3d 1172, 1185–86 (11th Cir.
2015) ("Unlike the state law counterclaim at issue in *Stern*, the ownership issue was 'deeply
embedded' in the case. The bankruptcy court was 'necessarily required to determine who the real
owners of the Alleged Debtors actually were in order to rule on the creditors' claims.'")

23.     Defendant's attempted reliance on *In re Skyline Concrete Floor Corp.*, 410 B.R.
564 (E.D. Mich. 2008) is equally misplaced. In *Skyline*, <u>prior to</u> seeking Chapter 11 bankruptcy
protection, the debtor was a named defendant and cross-complainant in a state lawsuit with the

---

[5] The Debtor cannot over emphasize the critical fact that the City, to this day, continues to dispute the validity of the Sub-Ground Lease when, in fact, the Bankruptcy Court has decisively addressed this issue by ordering that the Sub-Ground Lease was assumed by the Debtor, which inherently means the Sub-Ground Lease was "unexpired" or not terminated by virtue of its assumption under Section 365(a) of the Bankruptcy Code.  (*See* Confirmation Order [Bank. Doc. 379 ¶¶ 6.b., 15). The City's obstinate opposition against this ironclad bankruptcy ruling reality, alone, provides the core basis for the Bankruptcy Court's retention of this Adversary Proceeding, which advances claims against the City for its direct attack on the Sub-Ground Lease.

Case 3:25-cv-00023-BJB-RSE    Document 1-3    Filed 01/13/25    Page 13 of 23 PageID
#: 83
Case 24-03007-jal    Doc 65    Filed 12/23/24    Entered 12/23/24 20:48:13    Page 13 of
23

creditor. *Id*. at 565. The state lawsuit was scheduled for trial mere days before the debtor's

bankruptcy petition. *Id*. A few months after debtor filed for bankruptcy protection, the state lawsuit

plaintiff filed an adversary proceeding "asserting claims identical to those asserted in its state court

lawsuit. . . ," and, two days later, filed a motion to withdraw the reference so that the district court

in the same jurisdiction could "conduct a jury trial of the causes of action asserted in this adversary

proceeding." *Id*. at 566. Because there was an identical state court case pending prior to the filing

of the Chapter 11 petition, and because the adversary proceeding was not core to the Chapter 11

petition (again, the identical claims predated the petition), the *Skyline* court allowed the adversary

proceeding to be transferred.

24.    Here, Plaintiff was not party to a state court action with the City before filing the

petition. Indeed, as set forth above, Plaintiff is not a party to any other action with the City in any

other court, let alone one that is identical to the Adversary Proceeding ready to commence trial

days before the Petition was filed. Additionally, the City requests that this core proceeding not only

be taken from the Bankruptcy court, but not even kept within this district. Thus, *Skyline* is

inapposite.

25.    If the Bankruptcy Court finds any of the causes of action in the Complaint to be

either "non-core" or *Stern* claims (it should not), then Plaintiff consents to final determination of

all such claims by the Bankruptcy Court. Alternatively, without full consent of the parties to the

Adversary Proceeding, Plaintiff will otherwise request that the Bankruptcy Court exercise its

jurisdiction to submit proposed findings of fact and conclusions of law to the District Court on all

such claims. *See Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 36 (2014); *Wellness Int'l

Network, Ltd. v. Sharif*, 575 U.S. 665 (2015).

**D.    APPLICABILITY OF A JURY TRIAL IS IMMATERIAL TO DECISION TO WITHDRAW.**

Case 3:25-cv-00023-BJB-RSE    Document 1-3    Filed 01/13/25    Page 14 of 23 PageID
Case 24-03007-jal    Doc 65    Filed 12/23/24    Entered 12/23/24 20:48:13    Page 14 of
23
#284

26.     Defendant's demand for a jury trial, if valid, does not necessitate an immediate withdrawal of the reference. Instead, it is a common practice in the Sixth Circuit for the bankruptcy court to continue with the case up to trial. *In re Energy Conversion Devices, Inc.*, No. 12-12653, 2012 WL 5383165, at *2 (E.D. Mich. Oct. 26, 2012) ("[T]he standard practice of this Court, and of others in this District, is to permit the Bankruptcy Judge to manage the pre-trial phase of the litigation, with this Court revisiting the matter of withdrawal if and when the case is ready for trial." (cleaned up)); *Official Comm. of Unsecured ex rel. Est. of Greektown Holdings, LLC v. Papas*, Nos. 10–cv–12628, 10–cv–12742, 10–cv–12774, 2010 WL 4807067, at *2 (E.D. Mich. Nov. 18, 2010) ("Generally, the Courts of this District have denied withdrawing the reference until the case is ready for trial.") Turning again to *GenCanna*, the bankruptcy court put little weight on the applicability of a jury trial as a reason to withdraw the reference because "the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." 2021 WL 1230483, at *2*; see also* Hicks Johnson, Can Litigants Request a Jury Trial in Federal Bankruptcy Court? JDSUPRA, February 28, 2022, https://www.jdsupra.com/legalnews/can-litigants-request-a-jury-trial-in-6410313/ (detailing the conditions by which a bankruptcy court may conduct a jury trial). Such was the case in *In re Romanzi*, No. 16-CV-14265, 2017 WL 1148921, at *4 (E.D. Mich. Mar. 28, 2017), where the court refused to withdraw the reference, even where the defendants refused to consent to a jury trial in the bankruptcy court. Thus, Defendant's demand for a jury trial does not support withdrawing the reference.

### E.    JUDICIAL EFFICIENCY AND RESOURCES WILL BE WASTED THROUGH WITHDRAWAL.

27.     The Bankruptcy Court's extensive familiarity with the Plan, Petition, Confirmation Order, along with convoluted circumstances and lengthy history concerning those documents and

Case 3:25-cv-00023-BJB-RSE    Document 1-3    Filed 01/13/25    Page 15 of 23 PageID
#: 85
Case 24-03007-jal    Doc 65    Filed 12/23/24    Entered 12/23/24 20:48:13    Page 15 of
23

the interrelation of the claims to the bankruptcy estate, weigh heavily against transferring the

venue. Starting anew in another jurisdiction would cause undue delay and expense and reward

Defendant's strategic delay tactics. *See GenCanna*, 2021 WL 1230483, at *3 ("Ultimately,

allowing the Adversary Proceeding to remain in Bankruptcy Court at this time, as other courts in

the Sixth Circuit have done, serves the best interests of judicial economy, resources, and

uniformity.") To the contrary, "[i]t has been recognized that there is substantial benefit in

delegating the administration of pretrial matters in cases like this to the sound discretion of the

Bankruptcy Court, subject to this Court's review." *In re Hadla*, No. 17-11801, 2017 WL 3309648,

at *3 (E.D. Mich. Aug. 3, 2017). Moreover, given the cases cited above, withdrawal of the

Adversary Proceeding at this time would result in an uninformed interpretation of § 157(d). Thus,

this factor weighs against Defendant and withdrawal of the reference.

## F.    TRANSFER OF PLAINTIFF'S CLAIMS TO CALIFORNIA IS UNWARRANTED AND INAPPROPRIATE.

28.    Because the reference should not be withdrawn from the Bankruptcy Court,

Defendant's request that the case be transferred to California pursuant to 28 U.S.C. § 1404(a) is

moot. *See In re SII Liquidation Co.*, No. 10-60702, 2011 WL 5101771, at *3 (Bankr. N.D. Ohio

Oct. 25, 2011) (choosing not to transfer a core adversary proceeding); *see also Argosy Cap. Grp.

III, L.P. v. Triangle Cap. Corp.*, No. 17 CIV. 9845 (ER), 2019 WL 140730, at *4 (S.D.N.Y. Jan. 9,

2019) ("In general, transfer-of-venue motions for 'core' bankruptcy proceedings are governed by

[28 U.S.C.] § 1412, which provides that '[a] district court may transfer a case or proceeding under

title 11 to a district court for another district, in the interest of justice or for the convenience of the

parties.'"). In the event the District Court determines that the reference should be withdrawn (it

should not), the Adversary Proceeding should remain with the District Court in Kentucky and not

transferred to California.

Case 3:25-cv-00023-BJB-RSE    Document 1-3    Filed 01/13/25    Page 16 of 23 PageID
Case 24-03007-jal    Doc 65    Filed 12/23/24    Entered 12/23/24 20:48:13    Page 16 of
23
#:86
23

29.     Defendants attempt to argue that Plaintiff's "California state law claims have no meaningful connection to Kentucky. Every relevant fact, legal issue, and party is rooted in California. The northern District is the most appropriate venue to hear this case." (Withdrawal/Venue Motion at 16.) Specifically, Defendants argue that the court, in its discretion and for the convenience of the parties, should transfer the case pursuant to § 1404(a).[6] *Id*. Such bold assertions, however, ignore both well-established law, as well as the allegations of the Complaint.

30.     "There is a strong presumption in favor of placing venue in the district where the bankruptcy proceedings are pending." *MD Acquisition, LLC v. Myers*, 2009 WL 466383, at *4 (S.D. Ohio 2009) (internal quotation marks omitted); *see also In re Bavelis*, 453 B.R. 832, 873 (Bankr. S.D. Ohio 2011) (citing multiple Sixth Circuit cases holding that there is a presumption for placing venue where the bankruptcy proceedings are pending). When analyzing a request to transfer under 28 U.S.C. § 1404(a), courts in the Sixth Circuit may consider the following non-exclusive factors in deciding whether a transfer is warranted: "(1) whether a transfer would promote the economic and efficient administration of the bankruptcy estate, (2) whether the interests of judicial economy would be served by the transfer, (3) whether the parties would be able to receive a fair trial in each of the possible venues, (4) whether either forum has an interest in having the controversy decided within its borders, (5) whether the enforceability of any judgment would be affected by the transfer and (6) whether the plaintiff's original choice of forum should be disturbed." *Meritage Homes Corp. v. JPMorgan Chase Bank, N.A.*, 474 B.R. 526, 569 (Bankr. S.D. Ohio 2012).

---

[6] Transfer of venue may be had pursuant to 28 U.S.C. §§ 1404, 1406, or 1412. Because Defendants only bring a motion to transfer venue pursuant to Section 1404(a), Plaintiff will limit its objection to that section of the U.S. Code.

Case 3:25-cv-00023-BJB-RSE    Document 1-3    Filed 01/13/25    Page 17 of 23 PageID
#: 287
Case 24-03007-jal    Doc 65    Filed 12/23/24    Entered 12/23/24 20:48:13    Page 17 of
23

31.     Whether to transfer an adversary proceeding under Section 1404(a) is a
discretionary decision by the bankruptcy court and should be undertaken with caution. *Manville
Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir.1990) ("[T]he district in which the underlying
bankruptcy case is pending is presumed to be the appropriate district for hearing and determination
of a proceeding in bankruptcy."); *Argosy Cap. Grp. III, L.P. v. Triangle Cap. Corp.,* No. 17 CIV.
9845 (ER), 2019 WL 140730, at *4 (S.D.N.Y. Jan. 9, 2019) ("Court-ordered transfers pursuant to
either statutory provision are context-specific and discretionary."). The burden of proof on a
motion to transfer venue lies with the Defendants as the movants, who must establish that the
transfer is warranted by a preponderance of the evidence. *Enron Corp. v. Arora*, 317 B.R. 629, 639
(Bankr. S.D.N.Y. 2004).

### (i)     Kentucky, Not California, Is the Agreed Upon Venue for the Complaint

32.     Going to the balancing factors, the City first attempts to argue that Plaintiff
contractually agreed that Oakland would be the exclusive venue to handle disputes arising from
the contract between OBOT and the City. (Withdrawal/Venue Motion at 18–19.) The problem with
this argument, however, is that the City has already acknowledged that Plaintiff and the City are
not in privity of contract: "*To be clear, ITS and the City are not in privity of contract with one
another.*" (City Obj. 3 (emphasis in original); Compl. ¶ 57.) Because there is no privity of contract,
a forum selection clause in an agreement between OBOT and the City is inapplicable and not
binding on the Adversary Proceeding's venue.

33.     To the contrary, Sections 14 and 27 of the Confirmation Order expressly provides
that the Bankruptcy Court will retain jurisdiction over any subsequent litigation like the Complaint.
*See also In re: Celsius Network LLC*, *et al*., Post-Effective Date Debtors. *Mohsin Y. Meghji,
Litigation Administrator, as Representative for the Post-Effective Date Debtors, Plaintiff, v. Casla*

*Realty LLC, Defendant. Additional Party Names: Jason Stone, Puerto Rican LLC*, No. 22-10964

(MG), 2024 WL 5098317, at \*4 (Bankr. S.D.N.Y. Dec. 12, 2024) (finding that transfer of the case

would be improper where the bankruptcy court retained jurisdiction over adversary proceedings

arising from the Chapter 11 case.) Defendant was aware of the Plan and Confirmation Order as it

objected to the same. Consequently, Defendant was aware—<u>prior to</u> the filing of the Complaint—

where matters related to the Petition and Plan would be conducted. Thus, this factor weighs heavily

in favor of keeping the Complaint here in the Western District of Kentucky, the venue chosen by

Plaintiff to hear the Adversary Proceeding.

**(ii)    The Adversary Proceeding Is Focused on the Plan and Petition in the Western
         District of Kentucky**

34.    There is a strong presumption for adversary proceedings to be heard in the same

jurisdiction where the bankruptcy proceeding is pending. *See Bank of New York Mellon v. 251*

*Gotham LLC*, 604 B.R. 71, 80 (Bankr. S.D. Ala. 2019) (holding that venue was proper in the district

where the bankruptcy case was pending, particularly given the court's ability to hold hearings

remotely). Understanding that the Adversary Proceeding is inextricably linked to the Petition, Plan

and Confirmation Order—all reviewed and acted on by the Bankruptcy Court—there is a

presumption that judicial economy would be best served by keeping the Adversary Proceeding

with the Bankruptcy Court, which would continue to manage and oversee this complex bankruptcy

case. Then, if the reference is withdrawn (it should not), the Bankruptcy Court can turn the case

over to the District Court to conduct a jury trial.

**(iii)    Witnesses and Evidence Are Not Concentrated in Northern California**

35.    The "greatest weight to whether the proposed transfer would promote the economic

and efficient administration of the bankruptcy estate." *In re Bavelis*, 453 B.R. 832, 874 (Bankr.

S.D. Ohio 2011). Defendant claims that "[t]he Northern District has already held one trial about

Case 3:25-cv-00023-BJB-RSE    Document 1-3    Filed 01/13/25    Page 19 of 23 PageID
#: 289
Case 24-03007-jal    Doc 65    Filed 12/23/24    Entered 12/23/24 20:48:13    Page 19 of
23

issues stemming from the development project and contracts related to ITS's claims here. See *OBOT I*, 321 F. Supp. 3d 986, aff'd, 960 F.3d 603. The court is therefore already familiar with the extensive history of this project. The Western District of Kentucky, on the other hand, would have to start from scratch, which would be particularly time-consuming and wasteful given the complexity of the issues at play." (Withdrawal/Venue Motion at 22.) This narrative grossly mischaracterizes the extent of the involvement of the Northern District of California. The Northern District of California court has not been involved in anything related to the proposed project since 2018—nearly seven years ago. Compare that to the Bankruptcy Court retaining the Adversary Proceeding given its connection to the Petition, Plan and Confirmation Order, as well as its familiarity with the matters given the City's extensive motion practice, the Western District of Kentucky would need to do little but hold a jury trial if the City refused for the Bankruptcy Court to conduct a jury trial—Plaintiff's preference if a jury trial is necessitated. Moreover, the matters pending before the Northern District of California in *OBOT I* involved the City's breach of the development agreement with OBOT and its other unconstitutional conduct, none of which is at issue in the Adversary Proceeding.

36.    Moreover, most courts have now determined that witness and documents being in another state is immaterial as to whether a case should be transferred because modern conveniences "have mostly ameliorated the burdens of defending suit in another state." *H.E.R.O., Inc. v. Self*, No. 12-60038-CIV, 2012 WL 1802431, at *7 (S.D. Fla. May 17, 2012); *see also Zelinski v. Shurwest, LLC*, No. 219CV804FTM38MRM, 2021 WL 765469, at *3 (M.D. Fla. Feb. 26, 2021) (finding that defendant did not meet its substantial burden to show inconvenience and stating that "with e-discovery and Zoom quickly supplanting the need for most in-person proceedings, it realistically makes little difference whether this case is litigated in Arizona or Florida . . . .").

Case 3:25-cv-00023-BJB-RSE    Document 1-3    Filed 01/13/25    Page 20 of 23 PageID
#: 90
Case 24-03007-jal    Doc 65    Filed 12/23/24    Entered 12/23/24 20:48:13    Page 20 of
23

Indeed, in this Adversary Proceeding, other than the July 11, 2024 hearing, all other hearings have
been held remotely. Additionally, Plaintiff anticipates that most discovery in the Adversary
Proceeding will be conducted remotely. Thus, this factor does not weigh in favor of transfer.

    **(iv)    Private and Public Interest Would Be Best Served in the Western District of
Kentucky**

    37.    To argue that both private and public interest would be best served by transferring
the case, Defendant attempt to resurrect the same unmeritorious arguments included in its Motion
to Dismiss: California Government Claims Act, waiver of sovereign immunity, interest of the
citizens of California among others. (Withdrawal/Venue Motion at 22-23). Defendant's arguments
were unpersuasive then and they are no more persuasive now.

    38.    "Public-interest factors may include: (1) comparative administrative difficulties
flowing from court congestion; (2) the local interest in having localized interests decided at home;
(3) the familiarity of the forum with the law that will govern the case; and (4) avoidance of
unnecessary problems of conflict of laws or in the application of foreign law." *In re Dozier Fin.,
Inc.*, 587 B.R. 637, 648–49 (Bankr. D.S.C. 2018). As set forth above, none of these public-interest
factors falls in favor of the Defendant but are all in favor of Plaintiff. "[T]here [also] is the public
policy of centralizing bankruptcy proceedings, and there is a strong presumption in favor of
maintaining the venue of an adversary proceeding where the bankruptcy is pending." *Id*. at 649.
This is particularly true where the complaint alleges that the wrongful conduct resulted in the
bankruptcy proceeding and said conduct continues to impact the value debtor's business. *Id*.; *see
also In re Schouten*, 657 B.R. 531, 541 (Bankr. N.D. Tex. 2024) ("This lawsuit, though labeled a
non-core proceeding, is *the* asset of the bankruptcy estate that might generate some recovery for
its creditors. This goes to the heart of the administration of this case. The Court concludes that
such considerations present the very set of circumstances that outweigh the deference accorded the

Case 3:25-cv-00023-BJB-RSE    Document 1-3    Filed 01/13/25    Page 21 of 23 PageID
Case 24-03007-jal    Doc 65    Filed 12/23/24    Entered 12/23/24 20:48:13    Page 21 of
#: 291
23

forum selection clause at issue here. The motion to transfer venue will be denied.") Thus, this factor also does not weigh in favor of Defendant.

39.     Finally, as stated above, Defendant attempts to utilize the same arguments in its request for the transfer of this matter to California as was used in its Motion to Dismiss. The Bankruptcy Court, through the Memorandum Opinion and Order, has concluded that such arguments lack merit: "Plaintiff's claims are permitted by statute, are not time barred as the City admitted in prior statements to this Court and because the City's misconduct continues, the automatic stay under California law only stays enforcement of the California Judgment, and Plaintiff has not asserted a cause of action for breach of contract.  Plaintiff meets the pleading requirements to state claims against the City for tortious interference with prospective economic advantage and tortious interference with contract." (Memorandum at 15.) Thus, it would be a waste of judicial resources for another district court to weigh through those arguments, particularly at this stage of the proceeding.

40.     Therefore, given the strong presumption for a case to be heard in the jurisdiction in which it was filed—particularly where it is related to a pending bankruptcy proceeding—combined with the fact that most (if not all) the factors for transfer weigh against Defendant, the Adversary Proceeding should not be transferred.

## **CONCLUSION**

Based on the reasons above, the Withdrawal/Venue Motion should be denied.

Respectfully submitted,

*/s/ Robert M. Hirsh*
Robert M. Hirsh
NORTON ROSE FULBRIGHT US, LLP
1301 Avenue of the Americas
New York, New York 10019-6022
Telephone: (212) 318-3400
Robert.hirsh@nortonrosefulbright.com

*/s/ Barry W. Lee*
Barry W. Lee
MANATT PHELPS & PHILLIPS, LLP
One Embarcadero Center, 30th Floor
San Francisco, California 94111
Telephone: (415) 291-7450
bwlee@manatt.com

*/s/ Skyler M. Sanders*
Skyler M. Sanders
PARSONS BEHLE & LATIMER
36 Professional Plaza, Suite 200
Rexburg, Idaho 83440
Telephone: (208) 557-1953
ssanders@parsonsbehle.com

-and-

*/s/ Andrew D. Stosberg*
Andrew D. Stosberg
GRAY ICE HIGDON, PLLC
3939 Shelbyville Road, Suite 201
Louisville, Kentucky 40207
Telephone: (502) 625-2734
astosberg@grayice.com

*COUNSEL FOR PLAINTIFF*
*INSIGHT TERMINAL SOLUTIONS, LLC*

Case 3:25-cv-00023-BJB-RSE    Document 1-3    Filed 01/13/25    Page 23 of 23 PageID
#: 93
Case 24-03007-jal    Doc 65    Filed 12/23/24    Entered 12/23/24 20:48:13    Page 23 of
23

## CERTIFICATE OF SERVICE

It is hereby certified that on December 23, 2024, a true and correct copy of the foregoing was served electronically through the Court's CM/ECF system to all parties having entered an appearance in this proceeding, including Defendant's counsel.


*/s/ Andrew D. Stosberg*
COUNSEL FOR PLAINTIFF